# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maribel Lazzu, : 
                Petitioner : 
                 : 
            v. : No. 340 C.D. 2016
                 : Submitted: October 14, 2016
Unemployment Compensation : 
Board of Review, : 
                Respondent :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI              FILED: November 10, 2016

Maribel Lazzu (Claimant) petitions *pro se* for review of an order of the Unemployment Compensation Board of Review (Board) affirming an Unemployment Compensation Referee (Referee) decision that she was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] because her termination was due to willful misconduct. We affirm.[2]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) provides, in pertinent part:

An employe shall be ineligible for compensation for any week—

* * *

**(Footnote continued on next page…)**

Claimant was employed full-time by Aria Health Inc. (Employer) as an Emergency Department Technician from November 2010 through September 12, 2015. Employer has an attendance policy which provides for performance coaching and disciplinary action for tardiness, unauthorized leaving early and call outs. In February 2015, Claimant received coaching because she had been late and absent without excuse on several occasions and acknowledged that she had a problem. In March 2015, she was given an initial warning followed in July 2015 by a final warning for continuing lateness and/or absenteeism. Employer recorded five occurrences of call outs and 25 occurrences of tardiness in 2015. In August 2015, Claimant was absent but wrote a letter to Human Resources to explain the absence and was excused. On September 3, 2015, Claimant called out without an excuse and was subsequently dismissed.

Claimant filed a claim with the Erie UC Service Center which granted Claimant benefits, finding that although Employer had established its burden of showing that Claimant had been warned about her attendance, Claimant had shown good cause for the absence on September 3, 2015. Employer appealed.

---

**(continued…)**

> (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act….

43 P.S. § 802(e).

[2] The Board chose not to file a brief.

Before the Referee,[3] Lori Jones-Flak, Employer's Nurse Manager, testified that she had issued Claimant warnings with regard to her attendance prior to her discharge. She stated that Claimant signed a coaching form that "acknowledges that there is a trend in attendance issues, and it's a conversation that happens between the manager and the employee to just say, we've acknowledged the problem." (Transcript of Referee's Hearing on October 29, 2015 (N.T. 10/29/15) at 13.) Ms. Jones-Flak testified that the next step of the disciplinary process is called an "initial warning" and is a written document that she completed and Claimant signed. She explained that the initial warning's purpose is to show "that there was a progressive—or continuation of lateness or absenteeism that warranted the next step in the disciplin[ary] process." (N.T. 10/29/15 at 14.)

She further stated that the next step of the disciplinary process is the final warning, which she again completed and Claimant signed. She explained that the purpose of the final warning "was to state that, after a plan had been put in place, an attempt to improve performance with regard to attendance, it continued, and to a level of final warning." (N.T. 10/29/15 at 14.) Ms. Jones-Flak testified that Claimant mainly attributed her lateness to her long commute and traffic issues and informed her that she intended on finding employment in New York, where she resided. After Claimant was absent on September 3, 2015, Ms. Jones-Flak stated that she was "obligated to notify Human Resources that we have continued lateness or

---

[3] Barry Miltner, Employer's Senior Employee Relations Specialist, also testified that Claimant was aware of Employer's attendance and disciplinary policies because when employees are hired, they are informed of Employer's online system which contains all of the policies and are encouraged to review the policies on a regular basis, and employees are given a handbook which gives a general overview of the policies. Mr. Miltner explained that employees record their time by swiping their IDs through Employer's system and then scanning their fingerprints.

absenteeism, which falls under that same policy, and that it's been reviewed by Human Resources…. The decision was made that [Claimant's] employment would be terminated, based on this performance review." (N.T. 10/29/15 at 16.)

Claimant testified that she finished work at 7:00 a.m. on September 12, 2015, and that when she reported back to work at 11:00 p.m. on September 14, 2015, as scheduled, Ms. Jones-Flak told her she was being discharged because of her absence on September 3, 2015. When Ms. Jones-Flak asked if she had an excuse, she said she had a doctor's note because she was sick, but that she never gave it to her. She explained:

> C     Like, I just – I saw that on August 4, when I couldn't make it because of – the reason was – what happened on the Turnpike, I had to write a letter to explain to human research [sic] the reason why I wasn't coming to – I didn't even get to work on August 4. And after that, on September 3, when I woke up and didn't feel well, and I went to the doctor, and the doctor ordered me to stay off for a couple days [sic], I let the doctor know that I was supposed to report just to work that day, because I was off for the next seven days, and I wasn't supposed to report back to work until September 10.
>
> R     Okay.
>
> C     So the doctor just gave me the note for that day, and I – when I went back to work it was on the 10th, on 7 – at 7:00 p.m. – at 11, I'm sorry, 11:00 p.m., and I was doing 11:00 to 7:00 shift. And then I just knew – I knew that I was, you know, I knew that this was going to come, because Ms. Jones tried to call me and let me know that they was [sic] checking my [inaudible], and I was in the process, and they was [sic] checking my [inaudible] and that – if I had an excuse. And I said I did have an excuse for the doctor, and I just felt I – my job was being threatened all the time. And I already had enough coming three or four hours far, you

4

know, worrying about getting there on time, because every time that – something happened that – beyond my circumstance, I'm – meanwhile, I'm going to be fired.

R    Well, I have a question…. Didn't you give the note to Ms. Jones-Flak?

C    No. I didn't – I [inaudible]. I hadn't – did not – I didn't have it with me. I had left it in New York, and I already had come here – I mean to [inaudible]. So I didn't have it [inaudible], you know? And I could [inaudible] I just wanted to go because I was already planning to leave anyway. It was just all of a sudden [inaudible] me getting my license. They was [sic] avoiding me getting my license, until September 14 they gave me my license in New York. So that's the reason why I didn't – started working over here in New York yet.

***

R    And what did [Ms. Jones-Flak] say [when you told her about the doctor's note]?

C    You know, she just, you know, she – but also – I did also tell her that I was – that I didn't want to, you know, that [inaudible] because I just feel that, you know, it [inaudible], you know, to get fired. You know, like, if I [inaudible] they would've just [inaudible]. Well, that's what happened on August 4. They made me write a letter, and then September 3 I was sick, which I really – rarely called out at all, and that day I couldn't make it to work. And, you know, it's like, okay, they [inaudible] I could call out. So [inaudible] I thought that I just, you know, they just, you know, I [inaudible] just want me out of there. So why prolong more, you know, to stay and fight for something that – I just felt like I, you know, that I was going to lose my job anytime. Any day I could've – they could've told me I was fired.

(N.T. 10/29/15 at 17-18.)

The Referee reversed the Service Center's determination and denied benefits under Section 402(e) of the Law, finding that pursuant to its attendance policy, Employer had given Claimant warnings up to a final warning and Claimant was or should have been aware that her job was in jeopardy. Reasoning that Claimant had not established good cause for her final absence because she did not provide her doctor's note to Employer, the Referee concluded that Claimant's actions rose to the level of willful misconduct.[4] Claimant appealed to the Board, and the Board affirmed. This appeal by Claimant followed.[5]

On appeal, Claimant essentially argues that the Board erred in determining that Employer met its burden of proving that she committed willful misconduct. She contends that she had a doctor's note to excuse her absence but that

---

[4] Although the Law does not define the term "willful misconduct," the courts have defined it as:

> (1) wanton or willful disregard for an employer's interests; (2) deliberate violation of an employer's rules; (3) a disregard for the standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965, 968 (Pa. Cmwlth. 2010). Where a claimant is discharged for a work rule violation, the employer has the burden to show that the claimant was aware that the work rule existed and that the claimant violated the rule. *Id.* The employer must also establish that the claimant's actions were intentional and deliberate, and the employee's actions must be considered in light of all the circumstances, including the reasons for his or her non-compliance with the employer's directives. *Id.*

[5] Our review of the Board's decision is limited to determining whether an error of law was committed, constitutional rights were violated, or necessary findings of fact were supported by substantial evidence. *Frazier v. Unemployment Compensation Board of Review*, 833 A.2d 1181, 1183 n.4 (Pa. Cmwlth. 2003).

6

Employer had already decided to terminate her employment so submitting her documentation would be fruitless.

An employer has the right to expect that its employees will attend work when they are scheduled, that they will be on time, and that they will not leave work early without permission. *Fritz v. Unemployment Compensation Board of Review*, 446 A.2d 330, 333 (Pa. Cmwlth. 1980). As a result, excessive absenteeism and tardiness may constitute willful misconduct as a disregard of the standards that an employer has a right to expect of its employees. *Id.*; *American Process Lettering, Inc. v. Unemployment Compensation Board of Review*, 412 A.2d 1123, 1125 (Pa. Cmwlth. 1980); *Crilly v. Unemployment Compensation Board of Review*, 397 A.2d 40, 41 (Pa. Cmwlth. 1979).[6]

Although an advance warning is not a precondition or prerequisite to support a discharge for willful misconduct, a prior warning is relevant in that it reflects the employee's attitude toward his or her employment and adds to the willfulness of the misconduct. *American Process Lettering, Inc.*, 412 A.2d at 1125–26. However, even where a history of absenteeism is present, a claimant is entitled to receive compensation benefits where the final absence which precipitated his or her discharge was based on good cause. *See Tritex Sportswear, Inc. v. Unemployment Compensation Board of Review*, 315 A.2d 322, 324 (Pa. Cmwlth. 1980). A

---

[6] While absenteeism standing alone is grounds for discharge, it is not willful misconduct. *Lyons v. Unemployment Compensation Board of Review*, 533 A.2d 1144, 1145 (Pa. Cmwlth. 1987). Absenteeism can constitute willful misconduct if any of the following additional elements are present: (1) excessive absenteeism; (2) failure to notify the employer of the absence in advance; (3) lack of good or adequate cause for the absence; (4) disobedience of existing employer rules, regulations, or policy regarding absenteeism; and (5) disregard of warnings regarding absenteeism. *Pettey v. Unemployment Compensation Board of Review*, 325 A.2d 642, 643 (Pa. Cmwlth. 1974).

claimant's absence from work without providing the employer with proper medical documentation, where employer requires such documentation, constitutes willful misconduct precluding an award of unemployment compensation benefits. *See, e.g., Owens v. Unemployment Compensation Board of Review*, 748 A.2d 794, 799 (Pa. Cmwlth. 2000); *Lausch v. Unemployment Compensation Board of Review*, 679 A.2d 1385, 1392–93 (Pa. Cmwlth. 1996); *Braxton v. Unemployment Compensation Board of Review*, 400 A.2d 694, 696 (Pa. Cmwlth. 1979).

Here, Ms. Jones-Flak testified to giving Claimant multiple warnings regarding her absenteeism and tardiness over the course of the months leading up to her termination. Claimant also admitted that Ms. Jones-Flak asked her for an excuse for her September 3, 2015 absence, but that she did not submit the doctor's note because she was already planning on leaving her position with Employer, which Ms. Jones-Flak corroborated. Claimant further stated that she did not see any point in providing Employer with her doctor's note and fighting to stay because she felt that she could lose her job at any time.

Accordingly, because the combined testimony of Claimant and Ms. Jones-Flak constitutes substantial evidence upon which to find willful misconduct on the part of Claimant, we affirm the Board's order.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maribel Lazzu, : 
                Petitioner : 
                 : 
            v. : No. 340 C.D. 2016
                 : 
Unemployment Compensation : 
Board of Review, : 
                Respondent : 

# **O R D E R**

AND NOW, this 10th day of November, 2016, the order of the Unemployment Compensation Board of Review, dated January 11, 2016, at No. B-585582, is affirmed.

_____

DAN PELLEGRINI, Senior Judge